UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| KENNETH CHAPLIN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civ. Action No. 10-0518 (ESH) |
|  | ) |  |
| WILLIAM G. STEWART, JR. *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## MEMORANDUM OPINION

In this action brought *pro se* under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff, a federal prisoner, challenges the response of the Executive Office for United States Attorneys ("EOUSA") to his request for records pertaining to his sentencing proceedings.[1] Defendant moves for summary judgment. Upon consideration of the parties' submissions and the entire record, the motion will be denied.

### BACKGROUND

On November 12, 2006, plaintiff requested "information used by Magistrate Judge James R. Melinson to determine[] that Dickie Phillips and Dwight Abrahams testified that Chaplin left the Lockie Daley organization after September 1987." (Def.'s Mot., Declaration of Vinay J. Jolly ("Jolly Decl.") [Dkt. # 23-4], Ex. A.) In addition, plaintiff requested "evidence that the

---

[1] In addition to the EOUSA, plaintiff has named as defendants two Department of Justice employees. Because the FOIA provides no private cause of action against individuals, *see Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006); *Sherwood Van Lines, Inc. v. U.S. Dep't of Navy*, 732 F. Supp. 240, 241 (D.D.C. 1990), the complaint against the individual defendants is dismissed. Hereafter, the defendant will be referred to in the singular.

Probation Officer used to determin[e] that the Lockie Daley organization distributed one (1) Kilograms [sic] of cocaine per week from the fall of 1986 to May of 1988 as [] alleged in paragraphs [sic] (24) of Chaplin P.S.I. Report." (*Id.*) In March 2007, plaintiff's request was forwarded to the United States Attorney's Office for the Eastern District of Pennsylvania ("USAO"). (Declaration of Susan J. Falken ("Falken Decl.") [Dkt. # 23-5] ¶ 4.) Following an inquiry to the assistant United States attorney assigned to the appeal of plaintiff's criminal case and a search of her files, 203 pages of material were copied and sent to EOUSA on March 19, 2007 "as a reply to FOIA request 07-487." (*Id.* ¶ 8; *see id.* ¶¶ 4-7.) On May 24, 2007, EOUSA allegedly released 202 unredacted pages of information to plaintiff pertaining to the proceedings of his motion for relief under 28 U.S.C. § 2255. (Jolly Decl., Ex. C.; Falken Decl. ¶ 8.)[2] Plaintiff appealed the release to the Office of Information and Privacy ("OIP"), claiming that "he requested trial proceedings, and not civil proceedings." (Compl. ¶ 11; *see* Jolly Decl., Ex. D.) On January 18, 2008, OIP remanded the request to EOUSA "for a further search for responsive records in the Eastern District of Pennsylvania." (Jolly Decl., Ex. F.)

On February 25, 2008, plaintiff wrote separate letters to the U.S. Probation Office in Philadelphia, Pennsylvania, and the USAO there, seeking the status of the remanded request, "[s]pecifically, as it relate[s] to paragraph 24 of my PSI report which the Court had either used or relied upon to establish facts regarding my alleged involvement in the Lockie Deley [sic] Organization (LDO) and by which my sentence was determined as a result." (*Id.*, Exs. G, H.) The Probation Office responded on April 2, 2008, that "the purpose of your letter is

---

[2] Plaintiff claims that he received only 54 pages. Statement of Material Facts in Genuine Dispute Relating to Pl.'s Second Mot. in Opp'n to Defs' Second Mot. for Summ. J., or Alterative for Dismiss at 3, ¶ 5.

unclear" (*id.*, Ex. K); the USAO informed plaintiff that it had forwarded his letter to EOUSA, which "coordinates the processing of all FOIA requests for all [USAOs]," and that he should "direct all of [his] FOIA matters" to the EOUSA. (Falken Decl., Ex. C.) On April 14, 2008, in light of the USAO's letter, plaintiff sought from EOUSA the status of the remanded request. (Jolly Decl., Ex. L); on September 18, 2008, EOUSA informed him that it was awaiting a response from "the local U.S. Attorney's Office." (*Id.*, Ex. M.) On November 18, 2008, EOUSA, treating plaintiff's request as seeking his PSI report, informed him that because of Bureau of Prisons policy, it could not release the report to him but that he could view it at his institution. (*Id.*, Ex. N.) The letter informed plaintiff that it was "the final action on this above-numbered request (#07-487)" and advised him of his right to appeal to OIP within 60 days. (*Id.*) After attempting several times to clarify that he was seeking "actual" documents underlying the determinations of the magistrate judge and the probation office, not his PSI report (*id.*, Exs. O, S, W), plaintiff appeared to lodge an appeal with OIP on December 21, 2009. (*Id.*, Ex. X.) On May 7, 2010, OIP informed plaintiff that it had closed his "attempt[ed]" appeal "dated December 14, 2009," as untimely submitted. *Id.*, Ex. BB.

In response to plaintiff's attempts by letters of April 8, 2009, and June 8, 2009, to obtain the status of his request, EOUSA interpreted each letter as a new FOIA request and sought clarification of the request. (*See id.*, Exs. O, P, Q, R.) On June 4, 2009, the USAO in Philadelphia received from EOUSA plaintiff's FOIA request number 09-1567, and on August 3, 2009, it received yet another such request numbered 09-2636, each for the same documents sought in the first request number 07-487. (Falken Decl. ¶¶ 13, 15.) Following another search of the USAO's file in October 2009, it was "discovered that [the] file had 40 boxes of files and

3

there were 42 defendants involved." (*Id*. ¶ 20.) The USAO located plaintiff's presentence investigation report, "which led [] to a description of [three] documents [] Mr. Chaplin was looking for in regards to the documents the Probation Officer used." (*Id*. & Ex. I.) Those documents were described as witness testimony, money laundering documents presumably originating with the Drug Enforcement Administration ("DEA"), and proffer statements also presumably originating with the DEA. (Ex. I.) In response to this discovery, Falken asked EOUSA whether she should send plaintiff "a fee letter indicating the 40 boxes of materials we have, tell him to contact DEA or both[.]" (*Id*.) Assistant Director William G. Stewart II replied on October 21, 2009, "let's [] go back to the requester and explain the situation and give him the option of going to DEA and court." (*Id*., Ex. J.) By then, plaintiff had exhausted his two hours of free search time. (*Id*. ¶¶ 13, 22.)

By letter of November 27, 2009, Stewart informed plaintiff that pursuant to agency regulations, EOUSA was aggregating his requests seeking records from the same criminal file and charging search and duplication fees for request numbers 09-1567 and 09-2636. (Jolly Decl., Ex. V.) He further stated that "[a]lthough search fees are warranted in your case, the [Eastern District of Pennsylvania] has [] informed us that they are unable to conduct a search because they do not know which specific documents the probation officer and Judge used to determine certain issues in your case." (*Id*.) Stewart suggested that plaintiff may want to "request this information from the Clerk of the Court," invited him to file a new request if he could "identify the exact documents" he was requesting, and advised him of his right to appeal to OIP. (*Id*.) Plaintiff filed this action on May 30, 2010.

**DISCUSSION**

Summary judgment should be granted to the movant if it has shown, when the facts are viewed in the light most favorable to the nonmovant, that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In a FOIA action, the Court may award summary judgment to the agency solely on the basis of information provided in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); accord *Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987)); *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The Court is authorized under the FOIA "to devise remedies and enjoin agencies . . . if the agency has [improperly withheld agency records]." *McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)).

As an initial matter, the Court does not fathom how defendant could have reasonably interpreted plaintiff's request seeking the source of the information contained in "paragraph 24 of my PSI report" as a request for the report he apparently already had or, at the least, reviewed. Nor was it reasonable or logical for anyone actually reading plaintiff's correspondence to treat his repeated letters seeking updates of the "remanded" request as new FOIA requests. Plaintiff properly referred in each letter to the agency's assigned numbers (request number 07-487 and

5

appeal number 07-2101). Ignoring such references defeats the purpose of assigning numbers in the first place.

In any event, the record presents genuine issues with regard to defendant's FOIA compliance in two ways. First, EOUSA does not refute that plaintiff received just 54 of the 202 pages it claimed were produced, but it notes its "willing[ness]" to provide the remaining pages "without charge, should [plaintiff] desire them." Defs.' Reply to Pl.'s Opp'n to Defs' Mot. for Summ. J. at 6 n.4. EOUSA is obligated under the FOIA to produce all responsive records, which it admittedly has not.[3]

Second, in October 2009, Falken identified three categories of records responsive to plaintiff's request that may have been maintained by the USAO in Philadelphia. *(See* Falken Decl., Ex. I.) The fact that some records may have originated with DEA or with the court does not relieve EOUSA of its statutory obligation to search its files for any responsive records and to either release them to plaintiff or refer them to the DEA for further processing. *See McGhee*, 697 F.2d at 1109-10 (requiring agencies to produce records in their custody and control at the time of the FOIA request); *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1118 (D.C. Cir. 2007) ("McGehee's admonition that the agency receiving the initial request 'cannot simply refuse to act on the ground that the documents originated elsewhere' . . . indeed imposes a duty on that agency, but the agency may acquit itself through a referral, provided the referral does not lead to improper withholding under the McGehee test.") (quoting *McGhee*, 697 F.2d at 1110). Thus, Stewart's advice to Falken, upon her discovery of responsive records at the USAO, to "give

---

[3] According to the Falken declaration, 203 pages were forwarded to EOUSA from the Eastern District of Pennsylvania. In supplementing the record, EOUSA is directed to explain this one-page difference.

[plaintiff] the option of going to DEA and court" was in clear violation of the FOIA. Furthermore, Stewart's statement in the letter to plaintiff dated November 27, 2009, that "the [Eastern District of Pennsylvania] has [] informed us that they are unable to conduct a search because they do not know which specific documents the probation officer and Judge used to determine certain issues in your case" (Jolly Decl., Ex. V) is directly contradicted by the Falken declaration.

Given the foregoing facts, the Court concludes that defendant is not entitled to summary judgment and, thus, denies the pending motion for said relief. A separate Order accompanies this Memorandum Opinion.

_____s/_____
ELLEN SEGAL HUVELLE
DATE: January 10, 2011   United States District Judge